FILED

Jul 24 2019, 9:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Pedro Rayo Zagal, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent* | July 24, 2019 <br><br> Court of Appeals Case No. <br> 19A-PC-694 <br><br> Appeal from the <br> Elkhart Superior Court <br><br> The Honorable <br> Charles Carter Wicks, Judge <br><br> Trial Court Cause No. <br> 20D05-1809-PC-46 |

**Vaidik, Chief Judge.**

# Case Summary

In 2007, Pedro Rayo Zagal pled guilty to possession of cocaine. More than ten years later, he filed a petition for post-conviction relief alleging that his trial counsel was ineffective for failing to advise him that his guilty plea carried a risk

of deportation, and the post-conviction court denied him relief. Because Rayo Zagal admitted that the advisements of rights at his initial hearing and in his plea agreement informed him that he could be deported as a result of his guilty plea and conviction and that he read these advisements, we affirm the post-conviction court.

# Facts and Procedural History

Rayo Zagal came to the United States from Mexico in 1994, when he was seven years old. Rayo Zagal is in the country under the United States Department of Homeland Security's Deferred Action for Childhood Arrivals (DACA) program.

On January 30, 2007, the State charged Rayo Zagal, then nineteen years old, with Class D felony possession of cocaine. At his February 2 initial hearing, Rayo signed an Advisement of Rights and Penalties, which contained the following advisement: "If you are an illegal alien you may be deported if convicted of a crime." Appellant's App. Vol. II p. 16.

In April 2007, the State and Rayo Zagal, who was represented by counsel, entered into a written plea agreement. The agreement stated that Rayo Zagal was born in Mexico and a citizen of Mexico. *Id.* at 19. The agreement contained a section entitled "Defendant's Rights." Rayo Zagal wrote his initials next to the following provision:

> The defendant understands that if he/she is not a legal citizen of the United States, he/she may be deported as a result of his/her plea of guilty.

*Id.* at 21. In addition, Rayo Zagal wrote his initials next to the acknowledgments that he had "received and read, or had read to him," the plea agreement and that the plea agreement "was translated into Spanish, my native language, before I signed it." *Id.* at 20, 22. Both Rayo Zagal and his trial counsel then signed the plea agreement.

[5] At the guilty-plea hearing, Rayo Zagal acknowledged that he read over the plea agreement "carefully," understood what he read, and initialed and signed it. Tr. pp. 4-5. The trial court noted that Rayo Zagal was born in Mexico and a citizen of Mexico but was "completely fluent in English." Tr. p. 12. The court took the plea under advisement and set the matter for sentencing.

[6] At the sentencing hearing in May 2007, the trial court explained that given Rayo Zagal's age and immaturity, it "was reluctant to hang a felony conviction on [him] at this point." *Id.* at 22. The court told Rayo Zagal that if he was willing to accept "certain conditions," it was "willing to continue sentencing for a while to give [him] a chance to maybe avoid a felony conviction." *Id.* Rayo Zagal accepted the conditions, including that he stay away from drugs and alcohol, submit to chemical tests, obtain his GED, and perform community service, and the court "reset sentencing" for one year. *Id.* at 23.

[7] At the reset sentencing hearing in May 2008, the trial court found that Rayo Zagal had satisfied the conditions, entered judgment of conviction for possession of cocaine as a Class A misdemeanor, and sentenced Rayo Zagal to one year of incarceration, all suspended to probation. Appellant's App. Vol. II p. 23.

[8] Ten years later, in the summer of 2018, Rayo Zagal spoke with an immigration attorney, who told him that he couldn't become a United States citizen due to his possession-of-cocaine conviction and that his "road ends at DACA and if that gets thrown out, [he's] in jeopardy of being deported." Tr. p. 54. In September 2018, Rayo Zagal filed a petition for post-conviction relief alleging that his trial counsel was ineffective for not "advis[ing] [him] of the immigration consequences of entering a guilty plea." Appellant's App. Vol. II p. 32.

[9] At the post-conviction hearing, Rayo Zagal testified that his trial counsel did not advise him of the immigration consequences of pleading guilty to possession of cocaine. Tr. p. 58. However, Rayo Zagal admitted that he read and wrote his initials next to the provision in his plea agreement that he understood that if he was not a legal citizen of the United States, he may be deported as a result of his plea. *Id.* at 62-63. Despite agreeing that this language was not ambiguous, Rayo Zagal claimed that he "did not know to what degree that meant not until [he] spoke with an immigration lawyer." *Id.* at 63. Rayo Zagal also admitted reading and signing the Advisement of Rights and Penalties at his initial hearing, which similarly advised him that if he was

an illegal alien, he may be deported if convicted of a crime. *Id.* 64-66. In an order dated March 1, 2019, the post-conviction court found that Rayo Zagal's trial counsel did not perform deficiently and denied him relief.

[10] Rayo Zagal now appeals.

# Discussion and Decision

[11] A defendant who files a petition for post-conviction relief has the burden of establishing the grounds for relief by a preponderance of the evidence. *Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014). If the post-conviction court denies relief, and the petitioner appeals, the petitioner must show that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* at 269.

[12] Rayo Zagal contends that the post-conviction court should have granted him relief because his trial counsel was ineffective. When evaluating a defendant's ineffective-assistance-of-counsel claim, we apply the well-established, two-part test from *Strickland v. Washington*, 466 U.S. 668 (1984). *Bobadilla v. State*, 117 N.E.3d 1272, 1280 (Ind. 2019). The defendant must prove that (1) counsel rendered deficient performance, meaning counsel's representation fell below an objective standard of reasonableness as gauged by prevailing professional norms and (2) counsel's deficient performance prejudiced the defendant, i.e., but for counsel's errors, the result of the proceeding would have been different. *Id.*

[13] Rayo Zagal argues that his trial counsel performed deficiently because he did not advise him that his guilty plea carried a risk of deportation. In *Padilla v. Kentucky*, the United States Supreme Court held that "counsel must inform her client whether his plea carries a risk of deportation" and that failure to do so "clearly satisfies the first prong of the *Strickland* analysis." 559 U.S. 356, 371, 374 (2010). In *Bobadilla*, the Indiana Supreme Court held that it is "bound by *Padilla*—attorneys must advise their clients of immigration consequences from a guilty plea; otherwise, they render constitutionally deficient performance." *Bobadilla*, 117 N.E.3d at 1282.

[14] Rayo Zagal's brief relies heavily on *Bobadilla*. That decision was issued on March 5, 2019, four days after the post-conviction court's order in this case. More importantly, it was issued almost twelve years after Rayo Zagal pled guilty in 2007. In addition, *Bobadilla* relies heavily on *Padilla*, which the United States Supreme Court decided in 2010 and has since ruled is not retroactive. *See Chaidez v. United States*, 568 U.S. 342 (2013). Nevertheless, our Supreme Court stated in *Bobadilla* that when *Padilla* was decided "our state's case law already contained *Padilla*-esque requirements" in *Segura v. State*, 749 N.E.2d 496 (Ind. 2001). *Bobadilla*, 117 N.E.3d at 1281. As the Court explained, "*Segura* predated *Padilla* by nine years and the holdings roughly align . . . ." *Id.* at 1282. Arguably, then, the principles discussed by our Supreme Court in *Bobadilla* are relevant. But even considering *Bobadilla*, Rayo Zagal is not entitled to relief.

[15] Notably, Rayo Zagal does not dispute that the Advisement of Rights and Penalties at his initial hearing and the "Defendant's Rights" section of his plea

agreement informed him that he could be deported as a result of his guilty plea and conviction. He also does not dispute that he read these advisements. His argument therefore appears to be that trial counsel should have separately advised him of the immigration consequences of pleading guilty. Rayo Zagal, however, does not cite any authority to support such an argument. Indeed, the Indiana Supreme Court held in *Bobadilla* that trial counsel can satisfy *Padilla* by "letting the client read and mark [an] advisement" form that contains a *Padilla* warning:

> At the very least, counsel need only read the form to his client or stand by patiently while the client reads the unmarked form to satisfy *Padilla*'s mandate. *See Padilla*, 559 U.S. at 369 (acknowledging immigration law's complexity and explaining that when the law is unclear on whether a client faces deportation, "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences"). Reading the form puts the client on notice that a guilty plea amounts to a criminal conviction that might have immigration consequences and the client should consult an attorney.

*Bobadilla*, 117 N.E.3d at 1283.

[16]  Here, even assuming that trial counsel did not separately advise Rayo Zagal, Rayo Zagal admitted that he read the advisements at his initial hearing and in

his plea agreement. This is all that is required. Trial counsel was not deficient.[1]

We therefore affirm the post-conviction court.

Riley, J., and Bradford, J., concur.

---

[1] Rayo Zagal also argues that his trial counsel was ineffective for failing to object when the trial court entered judgment of conviction for possession of cocaine as a Class A misdemeanor. Citing Indiana Code sections 35-38-1-1.5 and 35-50-2-7, Rayo Zagal claims that the trial court could have only entered judgment of conviction as a Class D felony. Even if Rayo Zagal is correct, which the State disputes, Rayo Zagal has not established how entering judgment of conviction as a Class A misdemeanor instead of a Class D felony has prejudiced him.